# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANA MARIE CERVANTES, | ) |
| | ) |
| Plaintiff, | ) No. 14 C 10178 |
| | ) |
| v. | ) Magistrate Judge M. David Weisman |
| | ) |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Ana Marie Cervantes brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration Commissioner's decision denying her applications for supplemental security income and disability insurance benefits. For the reasons set forth below, the Court reverses the Commissioner's decision.

## Background

Plaintiff applied for supplemental security income and disability insurance benefits on July 17, 2008. (R. 76.) The applications were initially denied on August 28, 2008, and again after reconsideration on November 24, 2008. (R. 76-79.) Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"), which was held on August 17, 2010. (*See* R. 34-75.) On October 26, 2010, the ALJ denied plaintiff's applications, a decision the Appeals Council declined to review. (R. 1-4, 16-27.)

---

[1] On January 23, 2017, Nancy A. Berryhill succeeded Carolyn W. Colvin as Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (last visited May 8, 2017). Accordingly, the Court substitutes Berryhill for Colvin pursuant to Federal Rule of Civil Procedure 25(d).

Plaintiff filed suit for administrative review, and on May 21, 2013, Magistrate Judge Finnegan reversed the ALJ's decision and remanded the case for further proceedings. (R. 692-715.)

The second hearing was held on June 9, 2014. (*See* R. 584-633.) On October 2, 2014, the ALJ again denied plaintiff's applications. (R. 558-72.) The Appeals Council declined review, leaving the ALJ's decision as the final decision of the Commissioner, reviewable under 42 U.S.C. 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's

impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four. 20 C.F.R. § 404.1560(c)(2); *Zurawski*, 245 F.3d at 886. If that burden is met, at step five, the burden shifts to the Commissioner to establish that the claimant is capable of performing work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 25, 2008, the alleged disability onset date. (R. 560.) At step two, the ALJ determined that plaintiff has the severe impairments of "diabetes mellitus, obesity, peripheral neuropathy, and a bipolar disorder." (*Id.*) At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (R. 561.) At step four, the ALJ found that plaintiff cannot perform her past relevant work but has the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) and 419.967(b) except [that she] should be limited to simple, routine, and repetitive tasks with only occasional interaction with the public and co-workers in a work environment done at an average pace and without enhanced production rate requirements." (R. 564.) At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [she] can perform." (R. 571.) Accordingly, the ALJ concluded that plaintiff is not disabled. (R. 572.)

In reaching this determination, the ALJ "assign[ed] only limited weight to the opinions of [plaintiff's] treating [psychiatrist], Dr. Brilliant" (R. 569), a decision that plaintiff says was erroneous. An ALJ should give a treating physician's opinion controlling weight, if it "is well-

3

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

The ALJ said that he gave "limited weight" to Dr. Brilliant's opinions because:

> [They] are inconsistent with and not well-supported by the overall record, including his own mental health treatment notes. On the one hand, Dr. Brilliant reported that [plaintiff] has been maintained on the same medication treatment regimen for a while, is relatively stable, that her psychotic symptoms are relatively under control, that she can be managed on an outpatient basis, and that she has had long intervals between hospital admissions. On the other hand, Dr. Brilliant reported that the [plaintiff's] daily functioning is significantly impaired, that she experiences a number of side effects from her medications, that she is sleepy during the day, but not able to sleep at night, and that she has difficult focusing and concentrating, following instructions and is easily distractible. However . . . , [plaintiff] routinely denied any side effects from her medications and reported fluctuations in her ability to concentrate but has indicated she could follow simple instructions, which the [ALJ] has accommodated by limiting her to simple, routine, and repetitive tasks in a work environment allowing for work at an average pace and without enhanced production rate requirements. Moreover, the record establishes that notwithstanding her reported difficulties with focus and concentration, [plaintiff] continued to attend school for several months, has tried to get a job, and has more recently expressed an interest in returning to cosmetology school, all of which are activities that suggest she could perform at least simple, routine, and repetitive tasks.

(R. 569-70) (citations omitted).

Though inconsistency is a valid reason for rejecting a treater's opinions, *see Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence."), the "inconsistencies" the ALJ cites are illusory. There is, for example, no tension between Brilliant's characterizations of plaintiff's condition as "relatively stable" and "relatively under control" and his statement that her "daily functioning is significantly impaired." (R. 569-70); s*ee Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) (improper for ALJ to reject treater's opinion that claimant could not work on the basis of "hopeful remarks" in his notes such as the claimant "was doing 'fairly well,'" or "'was doing

quite well'"); *Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1081 (W.D. Wis. 2008) ("[T]he fact that . . . physicians . . . used the word 'stable' to describe [plaintiff's] fibromyalgia says nothing about whether [she] can work: a person can have a condition that is both 'stable' and disabling at the same time."). Similarly, plaintiff's statements that her ability to concentrate "fluctuat[es]" but can follow simple instructions does not contradict Brilliant's observations that she "has difficulty focusing[,] . . . concentrating, [and] following instructions, and is easily distractible." (R. 570.) *See Bauer*, 532 F.3d at 609 ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days."). Plaintiff's aspirations and attempts to work and attend school also do not undermine Dr. Brilliant's opinion, *see Henderson v. Barnhart*, 349 F.3d 434, 435 (7th Cir. 2003) ("[T]he fact that a person holds down a job doesn't prove that he isn't disabled, because he may have a careless or indulgent employer or be working beyond his capacity out of desperation."), *Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir. 1998) ("[E]mployment is not proof positive of ability to work, since disabled people, if desperate (or employed by an altruist), can often hold a job."), especially given her testimony that she stopped doing both because she had anxiety attacks, was overwhelmed and confused, and could not concentrate. (R. 590-94, 604-06, 608-11.) In short, the ALJ's refusal to give Dr. Brilliant's opinions controlling weight is not supported by substantial evidence in the record.

Even if Brilliant's opinions were not entitled to controlling weight, plaintiff contends the ALJ's treatment of his opinions, and those of the independent medical examiners ("IMEs"), was flawed because he did not address all of the factors set forth in 20 C.F.R. § 404.1527(c)(2). *See id.* (stating that an ALJ "will evaluate every medical opinion" by considering: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) whether

the opinions are supported by "medical signs and laboratory findings" (4) whether the opinions are consistent with the record as a whole; (5) whether the doctor is a specialist; and (6) any other relevant factors). An ALJ is not required to "explicitly weigh each factor in discussing [an expert's] opinion[s]," as long as his decision "makes clear that he was aware of and considered many of the factors." *See Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013). Clearly, the ALJ considered whether the doctors' opinions were consistent with the other evidence in the record. (*See* R. 569-70.) It is not clear, however, that he considered any of the other factors, including that: (1) Brilliant is a specialist who, unlike the IMEs, actually treated plaintiff, and did so almost monthly for several years; and (2) the opinion of IME O'Brien, which the ALJ credited, was rendered in 2010 and based on the medical records available at that time, while the opinion of IME Oberlander, which the ALJ rejected, was rendered in 2014 and was founded on additional, and more current, medical evidence.[2] Because it is not clear that the ALJ considered most, or even many, of the regulatory factors in determining the weight to assign to the doctors' opinions, his assessment of those opinions is insufficient.

Plaintiff further contends that the ALJ's determination that she does not meet Listing 12.04(C) is flawed because he offered only a "perfunctory analysis" of it. (Pl.'s Br. Supp. Reversing Comm'r's Dec. at 17); *see* 20 C.F.R. § 404, subpt. P, App. 1 § 12.04(C) (requiring "a [m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1.

---

[2] We note that the ALJ afforded "no weight to the opinion of psychologist and [IME] . . . Dr. Oberlander, who opined that claimant's impairments met the requirements of Listing 12.04 [depressive, bipolar and related disorders]." (R. 570.) The ALJ's reasoning for wholly discounting Dr. Oberlander's assessment was, in part, because it was inconsistent with the assessments of Dr. O'Brien, another psychologist and IME, and Dr. Hermsmeyer, a psychologist and state agency medical expert. (*Id.*) Of course, Dr. Oberlander's assessment was consistent with that of Dr. Brilliant, plaintiff's treating physician. Thus, wholly discounting Dr. Oberlander's finding of impairment is difficult to justify without greater explanation.

Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement."); 20 C.F.R. § 404, subpt. P, App. 1 § 12.00(C)(4) ("Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)."). On the contrary, the ALJ enumerated the elements of the listing and marshaled the evidence that supported his conclusion. (*See* R. 564.)

What plaintiff really contests is not the depth of the ALJ's analysis, but his refusal to accept IME Oberlander's opinion that plaintiff meets the Listing. (*See* Pl.'s Mem. Supp. Reversing Comm'r's Dec. at 18.) Because, as discussed above, the ALJ did not properly weigh the medical evidence, he will have to revisit the Listing 12.04(C) issue.[3]

The same is true for the ALJ's RFC and credibility/symptom evaluation[4] determinations, which are heavily influenced by his view of the medical evidence. Thus, after evaluating the

---

[3] We also encourage the ALJ, upon remand, to consider whether unintentional cherry-picking has occurred. For example, while the ALJ acknowledged that plaintiff's history included "progress notes have shown that [plaintiff's] condition is sporadic and her symptoms wax and wane from time to time," the ALJ concluded that "more often than not . . . the claimant's mood was stable." (R. 570.) Yet this more severe symptomology *is* consistent with Dr. Brilliant and Dr. Oberlander's assessments.

[4] Defendant recently issued new guidance for evaluating symptoms in disability claims, which supersedes SSR 96-7p and "eliminate[es] the use of the term 'credibility'" to "clarify that subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).

medical evidence in accordance with the regulations, the ALJ will have to reevaluate these issues as well.

## **Conclusion**

For the reasons set forth above, the Court reverses the Commissioner's decision and remands this case for further proceedings consistent with this memorandum opinion and order. Judgment is entered in favor of the plaintiff and against the Commissioner.

**SO ORDERED.**                    **ENTERED:   May 8, 2017**

_____
**M. David Weisman
United States Magistrate Judge**